**Richard A. CROUCH, Plaintiff,**

v.

**ATLAS VAN LINES, INC.; Merchant's Moving & Storage, Inc.; Ronald Grove, Sr.; Ronald Grove, Jr.; Henry "Hank" Furushiro, Defendants.**

No. 92–CV–281.

United States District Court,
N.D. New York.

Oct. 15, 1993.

Durr & Riley, Boonville, NY, for plaintiff; William J. Riley, of counsel.

Rossi, Murnane, Balzano & Hughes, Utica, NY, for defendants; Thomas P. Hughes, of counsel.

### MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

### I. INTRODUCTION.

This diversity action was brought pursuant to 28 U.S.C. § 1332 by an independent contractor/trucker against two moving companies, two employees of one of the moving companies, and another independent truck driver. The complaint states causes of action for conversion, personal injury, fraud, and six instances of breach of contract. The parties have stipulated to the dismissal of the action as to defendants Atlas Van Lines, Ronald Grove, Sr., Ronald Grove, Jr., and the eighth cause of action as to all defendants.

The remaining two defendants, Merchant's Moving and Storage, Inc. ("Merchant's"), and Henry Furushiro ("Furushiro"), have moved for summary judgment claiming this court lacks personal and/or subject matter jurisdiction and that venue is improper. Merchant's also alleges that plaintiff has failed to state a claim upon which relief can be granted as to the seventh cause of action. For the reasons that follow, the court grants defendants' motion and the complaint is dismissed.

### II. FACTS.

Plaintiff is a citizen of New York. Merchant's, whose principal business is the long distance moving of household and other goods, is an Idaho corporation with its principal place of business in Boise, Idaho. Merchant's is not licensed to do business in New York and has no agents or employees located in New York. Furushiro is a resident of Idaho.

Plaintiff is a professional tractor trailer driver dealing primarily in household goods. Plaintiff, who was an independent owner/op-

erator, contracted with Worldwide (a licensed agent of Atlas Van Lines) from 1982 to 1986, and with Ace of California ("Ace"), (also a licensed agent of Atlas Van Lines) from 1986 to 1990. According to the complaint, in 1989, plaintiff was approached by Furushiro (another independent contractor), on behalf of Merchant's, in an effort to get him to leave Ace and become an independent driver for Merchant's. A meeting was held in Chicago where Furushiro and Ronald Grove, Jr., on behalf of Merchant's, allegedly promised plaintiff a new gated van line trailer and a waiver of the standard insurance fee if he would leave Ace and sign with them. Plaintiff states that he terminated his relationship with Ace in reliance upon this offer.

Plaintiff complains that Merchant's: (1) has not paid him the full contract price for several pick-up and deliveries throughout the country; (2) owes him for the cost of storage of goods while in transit; (3) owes him for four "dead head trips"[1] between Hampton, New Hampshire and La Jolla, California; (4) deducted the insurance charge from his compensation in violation of the agreement; (5) after he was hurt on the job, deliberately indicated to him that he was not able to file a worker's compensation claim because the compensation was through Atlas; (6) did not provide him with a new gated trailer as promised; and (7) falsely stated that he would be hauling Henley shipments on a full-time basis.

Defendants have denied the material allegations contained in the complaint, and have asserted several affirmative defenses including lack of personal and subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## III. DISCUSSION.

### A. Personal Jurisdiction.

Since this court's subject matter jurisdiction is based on diversity, the law of New York will decide whether this court may exercise personal jurisdiction over the defendants. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985); *see also Arrowsmith v. United Press Int'l,* 320 F.2d

219, 223–24 (2d Cir.1963) (en banc). Accordingly, the court must determine whether New York's Civil Practice Law and Rules (CPLR) provides a vehicle through which the court may exercise its jurisdiction. N.Y.Civ. Prac.L. & R. §§ 301, 302 (McKinney 1990). Merchant's alleges that its business contacts in New York are not regular and systematic enough for them to be deemed present within the state for the purposes of obtaining jurisdiction pursuant to CPLR § 301, and that any of its transactions conducted in New York did not "arise out of" the plaintiff's causes of action for the purposes of obtaining jurisdiction pursuant to CPLR § 302.

### 1. Merchant's.

Merchant's essentially first argues that this court may not exercise jurisdiction over it pursuant to CPLR § 301 because it does not engage in a regular and systematic course of "doing business" in New York so as to warrant a finding of its "presence" in this jurisdiction. *Frummer v. Hilton Hotels Int'l, Inc.,* 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 43, 227 N.E.2d 851, 853 (1967), *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967). Without any physical presence in New York, a foreign corporation may only be subjected to the jurisdiction of New York if the corporation purposefully directs or conducts business, "not occasionally or casually, but with a fair measure of permanence and continuity." *Landoil Resources Corp. v. Alexander & Alexander Services, Inc.,* 77 N.Y.2d 28, 34, 563 N.Y.S.2d 739, 741, 565 N.E.2d 488, 490 (1990) (*quoting Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917)). "The test for 'doing business' is a 'simple [and] pragmatic one,' which varies in its application depending on the particular facts of each case." *Id.* Merchant's, therefore, can only be subjected to personal jurisdiction in New York if it operates here with some measure of regularity.

To invoke jurisdiction over a foreign corporation pursuant to CPLR 301, the corporation must have engaged in more than merely soliciting business. Substantial solicitation plus evidence of the foreign cor-

---

1. A "dead head trip" is to return from a destina- tion point without a paying load on the truck.

poration's "financial or commercial dealings in New York ... or the defendant's holding himself out as operating in New York" will suffice to subject the defendant to the court's jurisdiction (*Aquascutum of London, Inc. v. S.S. American Champion*, 426 F.2d 205, 211–12 (2d Cir.1970)).... *Pacamor Bearings, Inc. v. Molon Motors & Coil, Inc.*, 102 A.D.2d 355, 357, 477 N.Y.S.2d 856, 857 (3rd Dep't 1984).

■■■ Merchant's states that in 1990, it handled a total of 624 shipments across country, twelve of which involved a pickup or delivery in New York; and that in 1991, Merchant's handled 722 shipments, 21 with New York contact points. This amount of business conducted in New York, defendants argue, is not enough to justify being hauled into a federal court in New York when viewed in light of the volume of their non-New York business. Specifically, the Affidavit of Ronald Grove, Jr., states that in 1990 the twelve shipments in New York represented one-half of 1% of the total amount of business conducted by Merchant's nationwide; that is, total revenues amounted to $1,147,467.89, from which only $5,083.16 were derived from New York related transactions. Defendants' Appendix, Exhibit "B". Similarly, in 1991, the 21 shipments handled by Merchant's in New York represented about 4% of its nationwide business, or $47,432.28 of its total revenue of $1,146,702.22. Defendants' Appendix, Exhibit "C". Also, each New York shipment necessarily involved a second state. For instance, revenue earned on a shipment from California to New York would be based on a packing charge incurred in California, an unpacking charge in New York, and a transportation charge based on the mileage between California and New York. Merchant's uncontested Affidavits and Exhibits show that it conducted 2% of its 1991 business in New York, assuming that only one-half of its New York activities were actually earned in New York. Additionally, there is no evidence that Merchant's advertises or solicits business in New York. *See Laufer v. Ostrow*, 55 N.Y.2d 305, 310, 449 N.Y.S.2d 456, 459, 434 N.E.2d 692, 694 (1982).

The court concludes, based on the above, that Merchant's does not engage in a regular, systematic, and continuous course of activity in New York to warrant a finding that it is "present" in this jurisdiction for the purposes of CPLR § 301.[2] *See Murdock v. Arenson Int'l USA, Inc.*, 157 A.D.2d 110, 114, 554 N.Y.S.2d 887, 889 (1st Dep't 1990) ($9,000 annual sales in New York, representing .05% of total sales, does not rise to the level of doing business). Therefore, the court must now determine whether New York's long arm jurisdictional provision, CPLR § 302, extends to reach Merchant's in Idaho.

New York's long arm statute, CPLR § 302, provides in pertinent part:

(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

 1. transacts any business within the state or contracts anywhere to supply goods or services in the state

 . . . .

N.Y.Civ.Prac.L. & R. § 302(a)(1) (McKinney 1990). This section was drafted following the Supreme Court's "minimum contacts" rule as set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), which allows a non-domiciliary resident to be subjected to jurisdiction for some single or occasional act because "due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it, such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" In *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), another leading case on single-act jurisdiction statutes, the Supreme Court found that the requisite minimum contacts to establish jurisdiction over a non-domiciliary insurance company in California existed when the insurance company had no offices or agents in California, nor

---

**2.** Plaintiff does not dispute this conclusion in his Affidavit in response to defendants' motion.

Plaintiff argues that jurisdiction is proper pursuant to CPLR § 302(a).

had ever conducted any business in California aside from the one subject insurance policy, and had simply *mailed* the plaintiff insured's policy to him in California.

■ CPLR § 302 is just such a "single-act statute requiring but one transaction—albeit a purposeful transaction—to confer jurisdiction in New York." *Lupton Assoc., Inc. v. Northeast Plastics, Inc.*, 105 A.D.2d 3, 5, 482 N.Y.S.2d 647, 649 (4th Dep't 1984) (*quoting Parke–Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 17, 308 N.Y.S.2d 337, 339–40, 256 N.E.2d 506, 507–08 (1970)).[3] Therefore, this court may only exercise jurisdiction over Merchant's if (1) the non-domiciliary transacts business within New York; and (2) the claim against the non-domiciliary arises out of that business activity. *Cutco Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986). Additionally, it is settled in New York that the actions of a local representative of a non-domiciliary may be attributed to the non-domiciliary if it requested the performance of the subject actions and the actions benefit it, "regardless of whether the representative acted as an agent or independent contractor." *Lupton*, 105 A.D.2d at 7, 482 N.Y.S.2d at 651 (*citing East New York Sav. Bank v. Republic Realty Mortg. Corp.*, 61 A.D.2d 1001, 1002, 402 N.Y.S.2d 639, 641 (1978)). Moreover, "New York courts may now exercise jurisdiction [pursuant to § 302] over a non-domiciliary who contracts outside this State to supply goods or services in New York even if the goods are never shipped or the services are never supplied in New York, so long as the cause of action ... arose out of that contract." *Lupton*, 105 A.D.2d at 6, 482 N.Y.S.2d at 650.

■ Merchant's contends that it has had no business contact with New York which arose from plaintiff's causes of action, save for plaintiff's actions of picking up household goods in four New York cities, and the fact that plaintiff is a resident of New York. Plaintiff, on the other hand, alleges that Merchant's conducts business in New York and that he has made pick-up and deliveries in

New York; that Merchant's did regularly contact him in New York; and that any employment contract between the parties was executed in New York.

■ The court easily finds that Merchant's is "transacting business" in New York, and therefore the first part of the § 302 inquiry has been satisfied. By contracting with either New York State residents to move their household goods out of New York, or with out-of-state residents to ship their goods into New York, Merchant's has, although on an irregular basis, *see Standard Enter., Inc. v. Bag–It, Inc.*, 673 F.Supp. 1216, 1220 (S.D.N.Y.1987) ("[I]t is the 'nature and quality', and not the amount of New York contacts which determine the issue....."), purposefully directed its business activity in New York, "thereby invoking the benefits and protections of New York law." *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 456–58, 261 N.Y.S.2d 8, 13, 209 N.E.2d 68, 71 (1965), *cert. denied*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). The more difficult question is whether Merchant's business activities in New York are substantially related to the claims asserted by plaintiff. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 198–99, 522 N.E.2d 40, 43 (1988). A claim arises out of business activity in New York if there is "some articulable nexus between the business transacted and the cause of action sued upon." *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 322 (1981), *aff'g*, 72 A.D.2d 75, 80, 423 N.Y.S.2d 90, 93 (4th Dep't 1979) ("For jurisdiction to attach under CPLR § 302(a)(1), it must be shown not only that a defendant has performed an act in New York, but also that the cause of action arose from that act.").

■ Plaintiff alleges causes of action for breach of contract (second through sixth, ninth and tenth), conversion (first), personal injury (seventh), and fraud (tenth). The eighth cause of action has been withdrawn. Of these nine causes of action, however, only two arguable arise from Merchant's business

---

**3.** In *Franklyn*, New York jurisdiction was found to be proper when a California defendant, although not physically present in New York, actively participated in a State auction over the telephone.

activities in New York. In the second cause of action, plaintiff states that while en route from San Francisco with a shipment, he made subsequent pick-ups in Penfield and Rome, New York, with delivery to Mountain Lakes, New Jersey and Atlanta, Georgia. Plaintiff alleges that Merchant's owes him the sum of $4,539.31. In the fifth cause of action, plaintiff alleges that Merchant's failed to pay him the sum of $2,000.00 as extra compensation for a shipment of wine to New York, New York. Plaintiff has satisfied both parts of the § 302 analysis, and this court has personal jurisdiction over Merchant's as to plaintiff's second and fifth causes of action. As discussed below, the court does not have personal jurisdiction over the first, third, fourth, sixth, seventh, ninth, and tenth causes of action, or the employment contract between plaintiff and Merchant's.

The first cause of action alleges that Furushiro, on behalf of Merchant's, directed plaintiff to remove items belonging to Ace from his trailer and place the items on a trailer owned by Merchant's, who then agreed to reimburse plaintiff after Ace deducted the sum of $1710.00 from his compensation. Plaintiff alleges that neither Merchant's nor Furushiro reimbursed him for those items. There is no indication from the complaint or papers submitted in opposition to Merchant's motion, whether this alleged conversion arose from Merchant's New York activities with the plaintiff. The court assumes that such is not the case.

The third cause of action involves a breach of contract claim arising from the alleged failure of Merchant's to reimburse plaintiff for storage charges incurred while in transit between Baskin Ridge, New Jersey and Hudson, Ohio. The fourth cause of action, also a breach of contract claim, alleges that Merchant's failed to compensate plaintiff for four dead head trips between Hampton, New Hampshire and La Jolla, California. The sixth cause of action, another breach of contract claim, alleges that Merchant's wrongfully deducted $8,500.00 from plaintiff's compensation as an insurance charge, after he was allegedly promised that no such charge would be deducted. The seventh cause of action seeks $50,226 resulting from an injury

suffered while he was loading his truck in Elk Grove Village, Illinois. The ninth cause of action alleges that plaintiff lost approximately $12,000 in net revenue because of Merchant's failure to purchase the gated trailer that he was promised as a condition of his employment. The tenth cause of action is for fraud and misrepresentation arising from Merchant's failure to purchase a new gated trailer, wrongfully deducting the 5.8% insurance charge, and failing to assign future Henley shipments to the plaintiff.

None of the above causes of action have any connection whatsoever to Merchant's activities in New York. *Iovine, Inc. v. Rudox Engine & Equip. Co.*, 786 F.Supp. 236, 238 (E.D.N.Y.1992) ("[T]he claim against the non-domiciliary must arise from the *same acts* which form the basis for the allegation that the non-domiciliary is transacting business in New York.") (emphasis added). The claims all arise from factual circumstances unrelated to New York. Only the second and fifth causes of action have any connection to New York, and even then both claims suffer from a defect in subject matter jurisdiction. *See infra.*

■ The court next must consider whether jurisdiction may be exercised over the contract itself, notwithstanding the fact that the events giving rise to the alleged breaches of the employment contract occurred outside New York. "A dispute arising out of the employment relationship is connected to the employment contract that gives rise to the relationship. If this court has jurisdiction over the contract it has jurisdiction over the lawsuit." *Berk v. Theatre Arts of W.Va., Inc.*, 598 N.Y.S.2d 418, 423 (N.Y. City Civ.Ct. 1993). Therefore, the important factor becomes whether the contract was substantially negotiated in New York so that the contract may be considered a "New York contract". In that circumstance, this court may exercise personal jurisdiction not only over the contract itself, but all the events performed pursuant to that contract. *Bialek v. Racal–Milgo, Inc.*, 545 F.Supp. 25 (S.D.N.Y.1982).

■ The employment contract was negotiated in Chicago and Boise, Idaho, with some negotiations occurring over the telephone. The contract was executed through

the mail. Defendants contend that the locus of any injury that may have occurred was in Chicago. Although plaintiff argues that some of the negotiations occurred over the telephone, presumably to his residence in New York; plaintiff has failed to provide the substance of such conversations, a vital evidentiary component necessary to defeat a motion for summary judgment from which a court may establish that a defendant has transacted business within the state. *Iovine,* 786 F.Supp. at 239; *George Reiner & Co., Inc. v. Schwartz,* 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977); *see also Berk,* 598 N.Y.S.2d at 421–22 ("[T]he key [to § 302 jurisdiction] is whether the acts in New York *substantially advanced* the contract negotiations.") (emphasis added).

Under § 302(a), "it is the activities of the defendant with respect to the specific contract at issue which determine whether defendant is subject to jurisdiction." *Pacamor Bearings,* 102 A.D.2d at 356, 477 N.Y.S.2d at 857. In the present case there is little evidence, other than Merchant's New York activities unrelated to their alleged contractual promises, from which this court could subject Merchant's, or more specifically the contract itself, to the jurisdiction of New York. Merchant's is not licensed to do business in New York, it maintains no office, telephone number or bank account in New York, and owns no property in New York.

Although plaintiff argues that some of the contract negotiations occurred over the telephone and that the contract was executed in New York, "the place where a contract is performed is more important for purposes of jurisdiction than the place where the contract is executed." *Lupton,* 105 A.D.2d at 7, 482 N.Y.S.2d at 651. Here, the terms of the contract which are the subject of the alleged breach, were to be substantially performed outside New York. In fact, plaintiff complains of only two transactions which argu-

ably give rise to Merchant's New York related activities with respect to any breach of contract allegations. However, even if this court did have jurisdiction over the non-New York activities performed pursuant to the employment contract, the court must first have jurisdiction over the contract itself. It is this court's opinion that jurisdiction is lacking over the contract because plaintiff has failed to offer sufficient evidence tending to prove that events critical to the formation of the contract were substantially performed in New York.

▪▪▪ Although not argued before this court, CPLR § 302(a)(3)[4] provides a basis for long arm jurisdiction when a non-domiciliary allegedly commits a tortious act outside New York, in this case fraud, *DuPont & Co. v. Chelednik,* 69 Misc.2d 362, 363, 330 N.Y.S.2d 149, 150 (1st Dep't 1971), which has forum consequences. However, the injury to plaintiff did not occur within New York. "[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff." *Carte v. Parkoff,* 152 A.D.2d 615, 616, 543 N.Y.S.2d 718, 719 (2nd Dep't 1989) (*quoting Hermann v. Sharon Hosp., Inc.,* 135 A.D.2d 682, 683, 522 N.Y.S.2d 581, 583 (2nd Dep't 1987)); *United Rope Dist., Inc. v. Kimberly Line,* 785 F.Supp. 446, 452 (S.D.N.Y.1992) ("The place of injury is where 'the critical events associated with the dispute took place.'") Chicago or Boise, then, is the situs of the alleged injury. *McGowan,* 52 N.Y.2d at 274, 437 N.Y.S.2d at 646, 419 N.E.2d at 324. There is no allegation that the tortious conduct caused injury in New York. In the ninth cause of action of his complaint, plaintiff does allege that due to defendants' failure to purchase a new gated trailer for him, he lost approximately $12,000 in income because he was unable to haul shipments of electronic

---

**4.** (a) [A] court may exercise personal jurisdiction over any non-domiciliary ..., who in person or through an agent: ...

3. commits a tortious act without the state causing injury to person or property within the state ..., if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from

goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;

N.Y.Civ.Prac.L. & R. § 302(a)(3) (McKinney 1990).

equipment during the winter months when the household goods business was slow. However, an injury does not occur in New York because a plaintiff suffers a loss of income within the state. *Storch v. Vigneau,* 162 A.D.2d 241, 242, 556 N.Y.S.2d 342, 343 (1st Dep't 1990).

### 2. *Furushiro:*

Plaintiff's claims against Furushiro are stated in the first and tenth causes of action. The first cause of action states a claim against either Furushiro or Merchant's in conversion for the sum of $1,710.00, and the tenth cause of action states that Furushiro and Ronald Grove, Jr. (who has been dismissed from the case by stipulation), individually and on behalf of Merchant's, defrauded plaintiff in the sum of $109,904.36.

 Plaintiff, in the first cause of action, alleges that defendants agreed to reimburse him for certain items removed from his trailer at the request of Furushiro, which belonged to Ace. Again, however, there is no indication that this alleged conversion arose from either Merchant's or Furushiro's New York activities with the plaintiff.

 With respect to the tenth cause of action, plaintiff claims that he was first approached by Furushiro acting as an agent of Merchant's, in an effort to leave Ace to become a contract owner/operator of Merchant's. To that end, a meeting took place between plaintiff, Furushiro, and Ronald Grove, Jr., in Chicago, Illinois, whereby an oral offer was made to plaintiff which guaranteed him that if he left Ace, Merchant's would provide him with a new gated trailer, would not deduct the 5.8% insurance charge from his compensation, and would primarily assign plaintiff to hauling Henley Group goods. Plaintiff alleges that defendants never intended to make good on their promises, and that defendants knew at the time of the agreement that the statements were false.

Similar to the analysis with respect to Merchant's, in order for this court to exercise personal jurisdiction over plaintiff's cause of action for fraud, Furushiro's business activities in New York must be substantially related to the circumstances surrounding the alleged fraud. However, there is no suggestion from the complaint and its supporting papers what activities, if any, were conducted by Furushiro in New York to justify long arm jurisdiction. Furushiro may very well have conducted business on behalf of Merchant's in New York, but plaintiff has failed to show how any of these activities which consisted of the moving of household goods, is related to Furushiro's contractual promises on behalf of Merchant's.

### B. *Subject Matter Jurisdiction:*

### 1. *Merchant's:*

The final issue remaining is whether this court has subject matter jurisdiction over plaintiff's remaining claims.

 A district court sitting in diversity has jurisdiction over all civil actions where the matter in controversy exceeds $50,000, exclusive of costs and interest. 28 U.S.C. § 1332(a). While the courts can aggregate all of the plaintiff's claims against one defendant to satisfy this requirement, *Carson v. Nat'l Bank of Commerce Trust and Sav.,* 356 F.Supp. 811 (D.C.Neb.1973), *aff'd,* 501 F.2d 1082 (8th Cir.1974), or can aggregate claims against two or more defendants who are jointly liable, *Aetna Casualty and Surety Co. v. Graves,* 381 F.Supp. 1159 (W.D.La.1974), it cannot aggregate the claims against two essentially separate individual defendants to reach this amount. *Osbahr v. H & M Constr., Inc.,* 407 F.Supp. 621 (N.D.Iowa 1975). Plaintiff's only two causes of action (the second and fifth) against Merchant's that survive the personal jurisdiction analysis, total only $6,539.31, far below the subject matter jurisdictional prerequisite of $50,000.

### 2. *Furushiro:*

With regard to Furushiro, this court has subject matter jurisdiction over the first and tenth causes of action which allege damages over $50,000.00. However, as discussed *supra,* this court does not have personal jurisdiction over Furushiro, despite the fact that he can not seek refuge behind the "fiduciary shield doctrine." *Kreutter,* 71 N.Y.2d at 467–72, 527 N.Y.S.2d at 199–202, 522 N.E.2d at 44–47.

## IV. *CONCLUSION:*

Accordingly, it is **ORDERED** that

1. Upon stipulation, the complaint is **DISMISSED** as to defendants Atlas Van Lines, Ronald Grove, Sr., and Ronald Grove, Jr.;

2. Upon stipulation, the eighth cause of action in the complaint is **DISMISSED** as to all defendants;

3. Upon lack of personal jurisdiction, the first, third, fourth, sixth, seventh, ninth, and tenth causes of action in the complaint are **DISMISSED** as to defendant Merchant's Moving & Storage, Inc.;

4. Upon lack of personal jurisdiction, the complaint is **DISMISSED** as to defendant Henry Furushiro;

5. Upon lack of subject matter jurisdiction, the second and fifth causes of action in the complaint are **DISMISSED** as to defendant Merchant's Moving & Storage, Inc.; and

6. In summary, the complaint is **DISMISSED** in its entirety as to all defendants, and the clerk is directed to enter judgment accordingly.